UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| | ) 1:19-cr- 126 |
| v. | ) |
| | ) Judge McDonough/Steger |
| | ) |
| AMMAR RAMAHI | ) |
| a.k.a. | ) |
| MARK RAMAHI | ) |

## PLEA AGREEMENT

The United States of America, by the United States Attorney for the Eastern District of Tennessee, and the defendant, AMMAR RAMAHI, a.k.a. MARK RAMAHI, and the defendant's attorney, Raymond Lail, have agreed upon the following:

1. The defendant will waive indictment and arraignment and plead guilty to an information charging the defendant with the following offense:

Count One. Aggregated Identify Theft, in violation of 18 U.S.C. § 1028A.

The punishment for this offense is as follows: 2 year term of imprisonment, which runs consecutively to all other terms of imprisonment imposed; up to 1 year supervised release; a fine of up to $250,000.00, a $100 special assessment, and any lawful restitution.

2. In consideration of the defendant's guilty plea(s), the United States agrees not to further prosecute the defendant in the Eastern District of Tennessee for any other non-tax criminal offenses committed by the defendant that are related to the charges contained in the indictment in this case and that are known to the United States Attorney's Office for the Eastern District of Tennessee at the time this plea agreement is signed by both parties.

3. The defendant has read the indictment, discussed the charges and possible defenses with defense counsel, and understands the crime(s) charged. Specifically, the elements of the offense(s) are as follows:

18 U.S.C. § 1028A – Aggravated ID Theft

The Defendant:

a) Knowingly transferred, possessed, or used;

b) Without lawful authority;

c) Means of identification of another person; and

d) During and in relation to a felony enumerated in § 1028A(c) or § 2332b(g)(5)(B).

4. In support of the defendant's guilty plea, the defendant agrees and stipulates to the following facts, which satisfy the offense elements. These are the facts submitted for purposes of the defendant's guilty plea. They do not necessarily constitute all of the facts in the case. Other facts may be relevant to sentencing. Both the defendant and the United States retain the right to present additional facts to the Court to ensure a fair and appropriate sentence in this case.

The defendant, AMMAR RAMAHI, a.k.a. MARK RAMAHI, and his family owned and operated Ramahi, Inc., d.b.a. Car Zone Auto Sales (Car Zone), a used automobile dealership, located in Austell, Georgia. The defendant was Secretary of Ramahi, Inc., and was responsible for the dealership's financial matters, including the purchase, sale, and financing of vehicles. The defendant's employee, W.A., was employed as the dealership's office manager.

Car Zone sold vehicles to its customers on credit pursuant to a Bill of Sale and a Simple Interest Retail Installment Contract ("Installment Contract") whereby the customers agreed to pay for the vehicles by making scheduled payments, typically twice a month, over a specified period of

time. These Installment Contracts created receivables representing monies owed to Car Zone by the customers.

Speed Financial Inc., was a financing company located in Cleveland, Tennessee. Speed Financial was owned and operated by T.S., and was in the business of providing financing to automobile dealerships.

Starting in or about April 2014, the defendant entered into a Master Purchase Agreement with Speed Financial whereby Speed Financial provided financing to Car Zone. For a specified, discounted price, Speed Financial would purchase a defined portion of the scheduled payments of the receivables owed to Car Zone by its customers pursuant to the Installment Contracts. In return, Car Zone would transfer its interest in the vehicles, the Bills of Sale, the Installment Contracts, and the scheduled payments to Speed Financial; and thereafter, Speed Financial was entitled to receive the defined portion of the scheduled payments made by the customers pursuant to the Installment Contracts. The defendant also provided T.S. and Speed Financial with the physical vehicle titles to hold as collateral.

Speed Financial's purchases of the scheduled payments of receivables from Car Zone were evidenced by a "Payment Interval Short Form Purchase Agreement" ("Short Form Purchase Agreement"). The Short Form Purchase Agreements were signed by T.S. on behalf of Speed Financial, and by the defendant or by W.A., on behalf of Car Zone. The Short Form Purchase Agreements identified the receivables purchased by Speed Financial pursuant to the terms set forth in the Master Purchase Agreement, and attached to the Short Form Purchase Agreements were the Bills of Sale, Installment Contracts, and other records for vehicles sold by Car Zone to its customers.

The Short Form Purchase Agreements were prepared by T.S. utilizing information about the vehicle sales which was provided to T.S. by W.A. via email in the form of a spreadsheet. The spreadsheet was prepared by W.A. and contained information about the vehicles, the buyers, and the payment terms of the Installment Contracts.

Beginning in or about March 2015, and continuing until in or about February 2016, the defendant began submitting false vehicle sales information, and fraudulent Bills of Sale and Installment Contracts containing the forged signatures of the alleged vehicle purchasers, to T.S. and Speed Financial. In May 2015, the defendant entered into a renewal of the Master Purchase Agreement with Speed Financial.

The defendant, assisted by W.A., used records of vehicles sold to Car Zone's actual customers in the past to create fraudulent Bills of Sale and Installment Contracts, making it appear as if the vehicles had recently been sold to the customers, when in fact, no sales had actually occurred. The defendant used the names and personal information of actual former customers and either forged the customers' signatures on the fraudulent Bills of Sale and Installment Contracts or had W.A. do so.

The defendant caused W.A. to utilize these names and information of actual former customers and the fraudulent Bills of Sale and Installment Contracts to create a spreadsheet summarizing the alleged vehicle sales. The defendant caused W.A. to email this spreadsheet from the Car Zone dealership in Austell, Georgia, to T.S. in Cleveland, Tennessee, in the Eastern District of Tennessee, who would utilize the information on the spreadsheet to prepare a Short Form Purchase Agreement.

From in or about March 2015, and continuing until in or about February 2016, T.S., based on the fraudulent spreadsheet received from W.A., frequently traveled from Cleveland, Tennessee, to

the Car Zone dealership in Austell, Georgia, where the Short Form Purchase Agreement was completed and signed by the defendant or W.A., on behalf of Car Zone, with the defendant knowing that the vehicle sales information was false, that the attached Bills of Sale and Installment Contracts were fraudulent, and that the Bills of Sale and Installment Contracts contained the forged signatures of the alleged customers.

The defendant promised to provide T.S. with the titles to the vehicles referenced in the Short Form Purchase Agreements at a later date; however, the defendant knew these promises were false at the time they were made because the defendant did not actually have the vehicles or the vehicle titles, and the defendant knew that that the alleged vehicle sales had never occurred.

In sum, the defendant provided and caused to be provided approximately 350 fraudulent Bills of Sale and Installment Contracts to T.S., resulting in a loss of approximately $857,000.00. Specifically, the facts that support the count of the Information to which the defendant is pleading guilty derive from an Installment Contract for the sale of a used 2004 Pontiac Grand Prix to Car Zone customer "W.W.W." This contract contained personal information about W.W.W., including the person's name and identifying information, without lawful authority or permission of W.W.W., and it was transmitted from the Northern District of Georgia to the Eastern District of Tennessee in furtherance of the wire fraud scheme (18 U.S.C. § 1343) set forth in the Information and reflected in the facts, above.

Some of these events took place in the Eastern District of Tennessee.

5. The defendant is pleading guilty because the defendant is in fact guilty.

The defendant understands that, by pleading guilty, the defendant is giving up several rights, including:

    a) the right to plead not guilty;

the Car Zone dealership in Austell, Georgia, where the Short Form Purchase Agreement was completed and signed by the defendant or W.A., on behalf of Car Zone, with the defendant knowing that the vehicle sales information was false, that the attached Bills of Sale and Installment Contracts were fraudulent, and that the Bills of Sale and Installment Contracts contained the forged signatures of the alleged customers.

The defendant promised to provide T.S. with the titles to the vehicles referenced in the Short Form Purchase Agreements at a later date; however, the defendant knew these promises were false at the time they were made because the defendant did not actually have the vehicles or the vehicle titles, and the defendant knew that that the alleged vehicle sales had never occurred.

In sum, the defendant provided and caused to be provided approximately 350 fraudulent Bills of Sale and Installment Contracts to T.S., resulting in a loss of approximately $857,000.00. Specifically, the facts that support the count of the Information to which the defendant is pleading guilty derive from an Installment Contract for the sale of a used 2004 Pontiac Grand Prix to Car Zone customer "W.W.W." This contract contained personal information about W.W.W., including the person's name and identifying information, without lawful authority or permission of W.W.W., and it was transmitted from the Northern District of Georgia to the Eastern District of Tennessee in furtherance of the wire fraud scheme (18 U.S.C. § 1343) set forth in the Information and reflected in the facts, above.

Some of these events took place in the Eastern District of Tennessee.

5. The defendant is pleading guilty because the defendant is in fact guilty.

The defendant understands that, by pleading guilty, the defendant is giving up several rights, including:

    a) the right to plead not guilty;

b) the right to a speedy and public trial by jury;

c) the right to assistance of counsel at trial;

d) the right to be presumed innocent and to have the burden of proof placed on the United States to prove the defendant guilty beyond a reasonable doubt;

e) the right to confront and cross-examine witnesses against the defendant;

f) the right to testify on one's own behalf, to present evidence in opposition to the charges, and to compel the attendance of witnesses; and

g) the right not to testify and to have that choice not used against the defendant.

6. The parties agree that the appropriate disposition of this case would be the following as to each count:

a) The Court may impose any lawful term(s) of imprisonment, any lawful fine(s), and any lawful term(s) of supervised release up to the statutory maximum(s);

b) The Court will impose special assessment fees as required by law; and

c) The Court may order forfeiture as applicable and restitution as appropriate.

No promises have been made by any representative of the United States to the defendant as to what the sentence will be in this case. Any estimates or predictions made to the defendant by defense counsel or any other person regarding any potential sentence in this case are not binding on the Court, and may not be used as a basis to rescind this plea agreement or withdraw the defendant's guilty plea(s). The defendant understands that the sentence in this case will be determined by the Court after it receives the presentence investigation report from the United States Probation Office and any information presented by the parties. The defendant acknowledges that the sentencing determination will be based upon the entire scope of the defendant's criminal conduct, the

defendant's criminal history, and pursuant to other factors and guidelines as set forth in the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553.

7. Given the defendant's agreement to plead guilty, the United States will not oppose a two-level reduction for acceptance of responsibility under the provisions of Section 3E1.1(a) of the Sentencing Guidelines. Further, if the defendant's offense level is 16 or greater, and the defendant is awarded the two-level reduction pursuant to Section 3E1.1(a), the United States agrees to move, at or before the time of sentencing, the Court to decrease the offense level by one additional level pursuant to Section 3E1.1(b) of the Sentencing Guidelines. Should the defendant engage in any conduct or make any statements that are inconsistent with accepting responsibility for the defendant's offense(s), including violations of conditions of release or the commission of any additional offense(s) prior to sentencing, the United States will be free to decline to make such motion, to withdraw that motion if already made, and to recommend to the Court that the defendant not receive any reduction for acceptance of responsibility under Section 3E1.1 of the Sentencing Guidelines.

8. The defendant agrees to pay the special assessment in this case prior to sentencing.

9. The defendant agrees that the Court shall order restitution, pursuant to any applicable provision of law, for any loss caused to: (1) the victim(s) of any offense charged in this case (including dismissed counts); and (2) the victim(s) of any criminal activity that was part of the same course of conduct or common scheme or plan as the defendant's *charged* offense(s).

10. Financial Obligations. The defendant agrees to pay all fines and restitution imposed by the Court to the Clerk of Court. The defendant also agrees that the full fine and/or restitution amount(s) shall be considered due and payable immediately. If the defendant cannot pay the full amount immediately and is placed in custody or under the supervision of the Probation Office at any

time, the defendant agrees that the Bureau of Prisons and the Probation Office will have the authority to establish payment schedules to ensure payment of the fine and/or restitution. The defendant further agrees to cooperate fully in efforts to collect any financial obligation imposed by the Court by set-off of federal payments, execution on non-exempt property, and any other means the United States deems appropriate. The defendant and counsel also agree that the defendant may be contacted post-judgment regarding the collection of any financial obligation imposed by the Court without notifying the defendant's counsel and outside the presence of the defendant's counsel. In order to facilitate the collection of financial obligations to be imposed with this prosecution, the defendant agrees to disclose fully all assets in which the defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party. In furtherance of this agreement, the defendant additionally agrees to the following specific terms and conditions:

a) If so requested by the United States, the defendant will promptly submit a completed financial statement to the U.S. Attorney's Office, in a form it provides and as it directs. The defendant promises that such financial statement and disclosures will be complete, accurate, and truthful.

b) The defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report on the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

c) If so requested by the United States, the defendant will promptly execute authorizations on forms provided by the U.S. Attorney's Office to permit the U.S. Attorney's Office to obtain financial and tax records of the defendant.

11. The defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense(s) to which defendant is pleading guilty. Removal and other immigration consequences are the subject of a separate proceeding, however, and defendant understands that no one, including the defendant's attorney or the district court, can predict to a certainty the effect of this conviction on defendant's immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is his automatic removal from the United States.

12. The defendant acknowledges that the principal benefits to the United States of a plea agreement include the conservation of limited government resources and bringing a certain end to the case. Accordingly, in consideration of the concessions made by the United States in this agreement and as a further demonstration of the defendant's acceptance of responsibility for the offense(s) committed, the defendant voluntarily, knowingly, and intentionally agrees to the following:

The defendant will not, whether directly or by a representative, request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. Section 552, or the Privacy Act of 1974, 5 U.S.C. Section 552a.

13. This plea agreement becomes effective once it is signed by the parties and is not contingent on the defendant's entry of a guilty plea. If the United States violates the terms of this plea agreement, the defendant will have the right to withdraw from this agreement. If the defendant violates the terms of this plea agreement in any way (including but not limited to failing to enter guilty plea(s) as agreed herein, moving to withdraw guilty plea(s) after entry, or by violating any

court order or any local, state or federal law pending the resolution of this case), then the United States will have the right to void any or all parts of the agreement and may also enforce whatever parts of the agreement it chooses. In addition, the United States may prosecute the defendant for any and all federal crimes that the defendant committed related to this case, including any charges that were dismissed and any other charges which the United States agreed not to pursue. The defendant expressly waives any statute of limitations defense and any constitutional or speedy trial or double jeopardy defense to such a prosecution. The defendant also understands that a violation of this plea agreement by the defendant does not entitle the defendant to withdraw the defendant's guilty plea(s) in this case.

14. The United States will file a supplement in this case, as required in every case by the Local Rules of the United States District Court for the Eastern District of Tennessee, even though there may or may not be any additional terms. If additional terms are included in the supplement, they are hereby fully incorporated herein.

15. This plea agreement and supplement constitute the full and complete agreement and understanding between the parties concerning the defendant's guilty plea to the above-referenced charge(s), and there are no other agreements, promises, undertakings, or understandings between the defendant and the United States. The parties understand and agree that the terms of this plea agreement can be modified only in writing signed by all of the parties and that any and all other promises, representations, and statements whether made before, contemporaneous with, or after this agreement, are null and void.

J. DOUGLAS OVERBEY
UNITED STATES ATTORNEY

5 SEP 19      By: *Steven S. Neff*
Date
STEVEN S. NEFF
Assistant United States Attorney

8-25-19      *signature*
Date
AMMAR RAMAHI
Defendant

8-25-19      *Ray Lail*
Date
RAYMOND LAIL
Attorney for the Defendant